UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| MARY TATE, </br></br> Plaintiff, </br></br> v. </br></br> STEAK N SHAKE, INC., </br></br> Defendant. | NO. 5:20-CV-0265-MAS |

**MEMORANDUM OPINION & ORDER**

With trial fast approaching, each party has filed motions in limine addressing numerous evidentiary issues in this case. The motions are ripe, and the Court addresses the various arguments below.

## I.   RELEVANT FACTUAL BACKGROUND

The facts of this dispute are straightforward. On December 27, 2019, Plaintiff Mary Tate ("Tate") slipped and fell in the parking lot of Defendant Steak n' Shake, Inc. ("Steak n' Shake") due to an oil spot. Tate blames her injuries on Steak n' Shake's inability to maintain its premises. To the extent there is any fault, Steak n' Shake points the finger at Jamia Detrick ("Detrick") contending the presence of oil was due to Detrick's negligent operation of her motor vehicle.

## II.   ANALYSIS

**A.   THE COURT REFRAINS FROM PREEMPTIVELY RULING ON A NUMBER OF ISSUES.**

The parties, as they are entitled, have filed motions in limine on countless topics. For the vast bulk of issues raised, the parties agree on their resolution. The agreement comes with little

1

surprise as the bulk of these requests merely request the Court to follow the Federal Rules of Evidence ("FRE").

However, simply because the parties agree does not mean the Court will enter an order adopting such an agreement. To be clear, the Court does not disagree with the parties on these positions and will certainly enforce the FRE. Rather, the Court is reticent to make advisory rulings on issues that have not occurred, and there appears to be no indication that such issues will occur.

The Court lists these issues below.

1. Comments Concerning the Financial Status of a Party;

2. Effect of the Verdict on the Parties and Insurance Rates/Premiums;

3. Attorney-Client Communications;

4. Evidence Already Excluded by the Court;

5. Character references to counsel;

6. Argument Inconsistent with the Jury Instructions and the Relevant Legal Standard;

7. Settlement Discussions;

8. References to Other Lawsuits Litigated or Pending Against Steak n' Shake;

9. Evidence of Insurance Coverage;

10. Hearsay Testimony of Statements of Medical Providers;

11. Use of Video Snippets During Opening Statements or Closing Arguments;

12. Use of the Term Victim in Describing Tate or Her Family;

13. Making Conscience of the Community or Golden Rule Arguments in Opening Statements and/or Closing Arguments;

14. Admission of Expert Reports;

15. Admission of Motion Practice; and

16. Suggestion of Best Business Practices.

The parties and the Court agree that any attempt to elicit testimony or seek the introduction of evidence relating to these topics is inappropriate. However, until such time as a party raises an actual objection based upon some action by another party, the Court will reserve its ruling. Thus, the motions in limine on these topics are denied without prejudice.

Moreover, there are other topics where the parties disagree, but the Court will still refrain from a ruling given their speculative nature. First, Tate seeks an order from the Court excluding any effort by Steak n' Shake and/or Detrick to play on juror sympathies and/or prejudice the justice system during their respective opening statements and/or closing arguments. Specifically, Tate seems to repeat some of the issues addressed above (*e.g.*, impact on insurance rates, etc.). Regardless, the Court will deny Tate's request at this time and reserve the right to address the issue more fully if presented at the trial in this matter.

Second, Steak n' Shake expresses concern that Tate may attempt to conflate and/or suggest that Steak n' Shake's internal policies and procedures supplant Kentucky's legal standard for premises liability cases. Although any such conflation is improper, there is no evidence that Tate is going to take such actions. Rather, Tate presumably intends to introduce the policies and procedures to explain Steak n' Shakes practices for dealing with hazards in its parking lot, a standard line of inquiry in a slip and fall case. Until such time as Tate attempts to conflate the legal standard with these policies and procedures, the Court will deny Steak n' Shake's motion without prejudice.

Again, the Court does not disagree with the position of the parties on these issues. Because these are speculative issues, however, the Court will reserve its judgment.

**B.    THE PARTIES HAVE AGREED ON CERTAIN IN LIMINE ARGUMENTS.**

The parties have reached agreement on certain evidentiary concerns that appear much more anticipatory in nature. Namely, Tate raises a concern about the possible testimony of any witnesses

not included in a party's initial disclosure under Fed. R. Civ. P. 26.  All parties may only utilize testimony from witnesses included on the initial disclosure from one of the parties in the litigation.  If no party in the litigation identified the witness in any initial disclosure, then that witness may not provide testimony.[1]  Of course, the parties are free to call any necessary witnesses as rebuttal witnesses regardless of the initial disclosures.  Tate's motion is granted under these terms.

Elsewhere, Tate moves to exclude any comments about her law firm or lawyers.  "An adequate voir dire to identify unqualified jurors is integral to the right to trial by an impartial jury." *Allen v. Mitchell*, 953 F.3d 858, 866 (6th Cir. 2020).  To accomplish such a feat, the Court must inquire if any potential juror has ever been represented by counsel of record or their law firm.  *See Brooks v. Caterpillar Global Mining America, LLC*, No. 4:14-cv-22-JHM, 2017 WL 3401476 (W.D. Ky. Aug. 8, 2017) (excluding references during voir dire to a firm's hourly rates, size of the firm, etc., but requiring the identity of "the attorneys, their law firms, and the location of the law firms in voir dire to determine whether the jurors personally know the attorneys or other members of the firm").  The Court agrees with the limited approach as set forth in *Brooks*.  As the Court will conduct voir dire on this and other standard voir dire topics, the Court will limit its questions to the issue of whether any potential juror has been represented, sued, or employed by Tate's law firm or Tate's specific counsel.  No additional questions concerning this topic will be permitted during questioning of the jury panel by counsel.

Finally, Steak n' Shake expressed concern over any testimony about why some Steak n' Shake employees may no longer be working for the company based upon fair and appropriate questioning during those individuals' discovery depositions.  Neither Tate nor Detrick contest this

---

[1] Detrick expressed concern that she should not be limited to only her initial disclosures, but the initial disclosures of any party.  [DE 92, Page ID# 896].  The Court agrees.

4

request. Thus, all parties are prohibited from seeking testimony concerning the reasons, if any, that a former Steak n' Shake employee is no longer employed by Steak n' Shake.

**C.    CONTESTED ISSUES**

The remaining issues raised by the parties in their respective motions in limine were contested in part or in whole. The Court addresses each below.

1. Collateral Source Payments

Both parties recognize that Kentucky has long followed the collateral source rule excluding the admission of any evidence of payments made by health insurance for medical bills related to a plaintiff's claims. [DE 63, Page ID# 585; DE 90, Page ID# 883-84]. Yet, Steak n' Shake suggests that the collateral source rule is not necessarily ironclad; Kentucky law permits certain, limited exceptions. Consequently, Steak n' Shake seeks to reserve the right to raise collateral source information if such an exception becomes applicable based upon the presentation of proof.

Like all pretrial rulings, testimony and evidence presented at trial can always alter the basis for any of these rulings and require the Court to revisit its prior decisions. For now, however, the Court will grant Tate's request that any evidence or testimony of collateral source payments be excluded from trial.

2. Tate's Hiring of Counsel

Tate seeks to exclude any reference to the timing of when Tate hired her counsel for this matter. Steak n' Shake counters that Tate has not established that such evidence is prejudicial under FRE 403. In support, Steak n' Shake cites to *Lotz v. Steak n' Shake, Inc.*, No. 5:19-cv-277-DCR, 2021 WL 2270353 (E.D. Ky. June 3, 2021) where this Court denied a mirror request as is made by Tate in this matter.

> The plaintiffs maintain that any reference to, or evidence of, plaintiffs' retention of counsel is irrelevant, unduly prejudicial, and protected by attorney-client privilege. However, the mere fact and date of retention generally is not protected by the

5

attorney-client privilege. And as illustrated by the Kentucky Supreme Court's decision in *Jones* [*v. Mathis*, 329 S.W.2d 55 (Ky. 1959)], the date of retention may be a relevant factor in considering whether medical expenditures are necessary or reasonable. The plaintiffs have not explained why such evidence would be unduly prejudicial such that it should be excluded under Rule 403. Accordingly, this portion of the plaintiffs' motion in limine will be denied.

*Id*. at *7.

The analysis and conclusion in *Lotz* hold true. Tate's request is denied.

3. <u>Evidence Concerning Culpable Conduct of Non-Parties</u>

Tate seeks exclusion of any suggestion that any non-party is legally at fault for purposes of apportionment. Steak n' Shake objects not to suggest other parties exist that may be legally culpable, but to preserve the ability to explore the practical ramifications of responsibility of all individuals involved in Tate's accident.

To be clear, both parties are correct. Per KRS 411.182, the Court will only include named or settled parties as part of any apportionment instruction. And the parties are free to bring in evidence describing the events at issue and the conduct of all those involved permitting a jury to draw whatever practical conclusions the jury chooses draws. If Tate's motion seeks an order indicating the Court will follow the rigors of KRS 411.182, the Court grants such a request.

4. <u>Disclosure of Damages</u>

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires every party claiming damages to disclose "a computation of each category of damages claimed by the disclosing party." Tate seeks to exclude introduction of such disclosure to the jury during trial. Tate's support for this argument is that such information interferes with the jury's discretion in awarding damages.

Steak n' Shake objects on several grounds, generally arguing that information that will be included in the jury instructions should be fair game for the parties throughout the trial.

6

The Court agrees with Steak n' Shake. The rigors of Rule 26 are there for a reason: to ensure all parties are aware of the amount of damages at issue. The same is true for the jury. *See Eichstadt v. Underwood*, 337 S.W.2d 684, 688 (Ky. 1960) (permitting counsel to reference the amount of damages sought during voir dire and opening statements). Tate's motion is denied.

5. <u>Prohibition Against Lay Witnesses Providing Medical Diagnoses</u>

Steak n' Shake seeks the exclusion of any testimony in which a lay witness may opine or suggest a medical diagnosis that is at issue. Tate objects, arguing that while lay witnesses certainly cannot provide medical opinions, they can testify as to the facts that underly those medical opinions and can convey their understanding of a medical diagnosis and treatment that person received (assuming all evidentiary hurdles are met).

Again, both parties are correct here. No witness, other than those so qualified, may provide expert testimony supporting or challenging the details of a medical diagnosis. However, a lay witness may certainly testify about the facts conveyed to a medical expert and their understanding of their diagnosis and treatment, including actions or omissions that person took in pursuing that diagnosis and treatment. With that understanding, the Court grants Steak n' Shake's motion on this ground.

6. <u>Exclusion of Medical Expenses Not Actually Incurred by Tate</u>

Steak n' Shake seeks an order requiring Tate to submit medical expenses as reimbursed following adjustments and deductions made by her insurer as well as Medicare and Medicaid. Tate objects, citing to *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676 (Ky. 2005) in which the Supreme Court of Kentucky plainly rejected the argument Steak n' Shake now advances. Although the Court recognizes that Justice Cooper wrote a lone dissent in *Miller* detailing the arguments now advanced by Steak n' Shake, his dissent has yet to find any footing in Kentucky's

7

jurisprudence. *See Brooks v. Caterpillar Global Mining America, Inc.*, No. 4:14-cv-22-JHM, 2017 WL 3426043, at *2 (W.D. Ky. Aug. 8, 2017).

Thus, Steak n' Shake's motion is denied.

7. Exclusion of Medial Expenses "Written Off" By Medical Provider

Steak n' Shake seeks an order from the Court reducing any judgment obtained by Tate by any costs "written off" by her medical provider. In other words, Steak n' Shake seeks the ultimate exclusion of medical expenses not actually expensed.

Tate strongly objects. In support, Tate couches her reasoning in the *Miller* decision cited above that discussed the collateral source rule and rejected the notion that a defendant should receive a windfall if an insurer is able to reduce the billed medical costs. The Kentucky Supreme Court explained its rationale in *Miller* as follows:

> First, the wrongdoer should not receive a benefit by being relieved of payment for damages because the injured party had the foresight to obtain insurance. Second, as between the injured party and the tortfeasor, any so-called windfall by allowing a double recovery should accrue to the less culpable injured party rather than relieving the tortfeasor of full responsibility for his wrongdoing. Third, unless the tortfeasor is required to pay the full extent of the damages caused, the deterrent purposes of tort liability will be undermined.

*Miller*, 177 S.W.3d at 683 (quoting *Schwartz v. Hasty*, 175 S.W.3d 621, 626 (Ky. App. 2005)).

Although *Miller* is certainly binding in its holding concerning the collateral source rule, that rule is not at issue here. While *Miller* is about the collateral source rule, the issue here is outside those bounds. Stated another way, *Miller* addressed when expenses were discounted to an insurer while the current is whether the insured ever incurred the expense at all. It is one thing for Steak n' Shake to be responsible for all market rate, medical expenses regardless of the insurer's discounts via *Miller* to avoid a windfall for a defendant, but it is another if Tate would receive a windfall if she were compensated for expenses never incurred. The Kentucky Supreme Court, in *Dennis v. Fulkerson*, agrees. 343 S.W.3d 633 (Ky. 2011). As stated there, the proper procedure

is to submit all medical expenses to the jury and, if the jury awards those medical expenses, reduce the judgment amount to account for the "written off" expenses. *Id*. at 638.

Regardless, Steak n' Shake's motion to reduce any judgment by the "written off" expenses relevant to Tate's medical treatment is premature until the jury reaches its verdict. The Court denies Steak n' Shake's motion on this issue without prejudice. If the jury reaches a verdict awarding Tate medical expenses, Steak n' Shake will be free to move the Court to reduce the award by any expenses "written off" at that time.

8. Subsequent Remedial Measures

All parties agree that, per FRE 407, subsequent remedial measures are inadmissible unless, *inter alia*, they are used to show the feasibility of such actions. Steak n' Shake argue that actions taken by its employees after the accident (*e.g.*, spreading salt in the area of the fall, placing wet floor signs around the area, spreading cat litter on the oil spill) should be excluded as subsequent remedial measures. Tate and Detrick object arguing that these actions show the feasibility of such actions.

Tate and Detrick are correct in noting the feasibility exception but fail to appreciate a critical element: "if disputed". A subsequent remedial measure showing feasibility is admissible **if** the feasibility of such actions is in dispute. Otherwise, the feasibility exception would simply swallow the rule. Here, there is no indication that Steak n' Shake is contesting the feasibility of its actions after the accident. In fact, the Court cannot perceive of any argument suggesting otherwise. Nor has Tate or Detrick presented the Court with any evidence suggesting Steak n' Shake is contesting the feasibility of its actions.

Accordingly, Steak n' Shake's motion is granted. Tate and Detrick are excluded from admitting any evidence or testimony regarding the subsequent remedial measures taken by Steak n' Shake immediately following Tate's accident.

9

9. <u>Indemnity Determination</u>

Finally, Detrick seeks a motion in limine concerning Steak n' Shake's indemnification claim against her. Detrick, however, in no way attempts to describe or identify a specific piece of evidence, categories of evidence, specific testimony, or possible line of inquiry she seeks to exclude from trial. Tate, in agreeing with Detrick's legal position, also fails to cite to any evidentiary considerations. Steak n' Shake, of course, objects to Detrick's motion.

The Court, however, has no idea the evidentiary relief sought by Detrick. Rather, Detrick's motion, in truth, seeks summary judgment as a matter of law against Steak n' Shake's indemnification claim against her. Or, possibly, Detrick seeks to preemptively argue the proper jury instructions that should be provided by the Court. Regardless, one of those requests is far too late and the other far too early. If Detrick seeks summary judgment, the Court's Amended Scheduling Order required the parties to file such motion by April 29, 2022. Detrick neither filed such a motion nor now seeks leave to file such a motion. If Detrick seeks to preemptively frame the proper jury instructions, such an argument will be fully addressed at the charge conference before the jury is provided the instructions.

In the end, without identification of what evidence Detrick seeks to exclude, her motion in limine is denied.

### III. <u>CONCLUSION</u>

Accordingly, for the reasons stated herein, IT IS ORDERED as follows:

1. Tate's Motion in Limine [DE 63] is **GRANTED IN PART, DENIED IN PART** as follows:

    a. Tate's request to exclude: (1) any testimony from witnesses not listed on party's initial disclosure; (2) any evidence suggesting possible legal liability of third

parties; (3) mention of collateral source payments; and (4) any discussion of her law firm's advertising or marketing efforts is **GRANTED**.

b. Tate's request to exclude: (1) any evidence concerning the wealth of the parties; (2) the effect of the verdict on the parties generally; (3) the effect of the verdict on insurance rates, premiums, or charges; (4) introduction of attorney-client communications; (5) commentary on excluded evidence; (6) character references about counsel; (7) comments regarding intent; (8) reference to settlement discussions; and (8) preclusion of evidence playing on jury sympathies or prejudice the justice system generally is **DENIED WITHOUT PREJUDICE**.

c. Tate's request to exclude: (1) how and why her counsel was hired and (2) mention of her Rule 26(a)(1) damages disclosure is **DENIED**.

2. Steak n' Shake's Motion in Limine [DE 70] is **GRANTED IN PART, DENIED IN PART** as follows:

a. Steak n' Shake's request to exclude: (1) any testimony from lay witnesses regarding medical diagnosis (2) reasons for former Steak n' Shake employees being no longer employed; and (3) subsequent remedial measures is **GRANTED**.

b. Steak n' Shake's request to exclude: (1) evident of other lawsuit against Steak n' Shake; (2) reference to settlement discussions; (3) references to a party's financial standing; (4) evidence of insurance or coverage; (5) prohibit any hearsay testimony by lay witnesses of conversations with medical personnel; (6) use of video snippets during opening statements or closing arguments

without express permission of the Court; (7) referring to Tate or her family as a victim; (8) efforts to utilize Golden Rule or Conscience of the Community arguments; (9) admission of expert reports; (10) medical expenses "written off" by the medical provider; (11) all medical records not properly introduced; (12) reference to or admission of a party's motion practice; (13) conflation or misinterpretation of the relevant legal standard; (14) conflation of the legal standard with Steak n' Shakes policies and procedures; and (15) reference to industry standard or best business practices is **DENIED WITHOUT PREJUDICE**.

    c. Steak n' Shake's request to exclude evidence of medical expenses that Tate has not incurred due to a discount obtained by her insurer is **DENIED**.

3. Detrick's Motion in Limine [DE 86] is **DENIED.**

Entered this 27th day of June, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge